1

2

3

4

5

6

7

8  UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9  AT TACOMA

10  ROBERT L. WHITE, JR.,

11            Plaintiff,                    CASE NO. 12-cv-5251-JRC

12     v.                                   ORDER ON PLAINTIFF'S
                                            COMPLAINT
13  MICHAEL J. ASTRUE, Commissioner
14  of the Social Security Administration,

15            Defendant.

16

17        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18  Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

    Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United
19
    States Magistrate Judge, ECF No. 4). This matter has been fully briefed (*see* ECF Nos.
20
    13, 16, 17).
21

22        After considering and reviewing the record, the Court finds that the ALJ failed to

23  evaluate plaintiff's mental impairments properly. The ALJ failed to indicate whether or

24

not he determined that plaintiff's ADHD was a severe impairment, and failed to demonstrate that he considered plaintiff's alleged ADHD symptoms during the remainder of the sequential disability evaluation process.

Similarly, the ALJ failed to explain how he determined the level of functional limitations as a result of mental impairments on plaintiff's restrictions in activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence or pace; and episodes of decompensation, when evaluating the "B" criteria of the Psychiatric Review Technique Form. When committing these harmful errors, the ALJ erred in his review of the medical evidence.

Therefore, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

BACKGROUND

Plaintiff, ROBERT L. WHITE, JR., was born in 1966 and was forty-one years old on his alleged date of disability onset of February 5, 2008 (*see* Tr. 127). Plaintiff reported being in special education classes as a child and dropping out of school in twelfth grade (*see* Tr. 371). As a child, he suffered both physical and sexual abuse (*see* Tr. 711-12). Examining clinical psychologist, Dr. Harmon, assessed that plaintiff's severe problems since childhood with ADHD, depression, and feelings of hopelessness seemed to have been "closely linked to his experiences of long-term physical and emotional abuse in his family" (*see* Tr. 369). Plaintiff experienced two psychiatric hospitalizations at Puget Sound Hospital, as well as several inpatient drug/alcohol interventions (*see id.*).

Plaintiff has past relevant work experience as a tractor-trailer driver, a job that he no longer is able to perform (Tr. 26). Plaintiff was injured when a faucet failed at work and he suffered severe burns as the front of his body was covered by hot asphalt (*see* Tr. 18). Although plaintiff's physical impairments appear to have improved since his workplace injury, plaintiff alleges mental impairments, such as post traumatic stress disorder ("PTSD") from the incident, depression, and attention deficit/hyperactivity disorder ("ADHD") (*see* Tr. 19-20).

PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act on June 11, 2008 (*see* Tr. 16, 127-28). His application was denied initially in March, 2009 and following reconsideration in June, 2009 (*see* Tr. 67-69, 73-78). Plaintiff's requested hearing was held before Administrative Law Judge Gordon Griggs ("the ALJ") on July 20, 2010 (*see* Tr. 34-58). On August 9, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 13-33).

On January 25, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on March 21, 2012 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on June 1, 2012 (*see* ECF Nos. 7, 8). In his Opening Brief, plaintiff questions whether or not the

1  ALJ: (1) erred in his review of plaintiff's severe impairments; (2) erred in determining

2  that plaintiff did not meet or medically equal any of the Listed Impairments in step three

3  of the sequential disability determination; and (3) erred in determining plaintiff's residual

4  functional capacity ("RFC") (*see* ECF No. 13, p. 2).

5                              STANDARD OF REVIEW

6          Plaintiff bears the burden of proving disability within the meaning of the Social

7  Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

8  the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

9  172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

10  (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

11  disability as the "inability to engage in any substantial gainful activity" due to a physical

12  or mental impairment "which can be expected to result in death or which has lasted, or

13  can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

14  §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

15  impairments are of such severity that plaintiff is unable to do previous work, and cannot,

16  considering plaintiff's age, education, and work experience, engage in any other

17  substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

18  1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

19          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

20  denial of social security benefits if the ALJ's findings are based on legal error or not

21  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

22  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.

Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports

the findings by the ALJ, the Court should "'review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's

conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting

Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently

whether or not "'the Commissioner's decision is (1) free of legal error and (2) is

supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir.

2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law

require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27

(9th Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation

omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121,  2012 U.S. App. LEXIS 6570

at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir.

2006) ("we cannot affirm the decision of an agency on a ground that the agency did not

invoke in making its decision") (citations omitted). In the context of social security

1  appeals, legal errors committed by the ALJ may be considered harmless where the error

2  is irrelevant to the ultimate disability conclusion when considering the record as a whole.

3  *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-

4  *46; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout,*

5  *supra*, 454 F.3d at 1054-55.

6  <u>DISCUSSION</u>

7  1.  **The ALJ erred in his review of plaintiff's severe impairments and failed to**

8  **evaluate the medical evidence properly**.

9

10  Step-two of the administration's evaluation process requires the ALJ to determine

11  whether or not the claimant "has a medically severe impairment or combination of

12  impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted);

13  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe"

14  if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R.

15  §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary

16  to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing,

17  pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking;

18  understanding, carrying out, and remembering simple instructions; use of judgment;

19  responding appropriately to supervision, co-workers and usual work situations; and

20  dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).

21  "An impairment or combination of impairments can be found 'not severe' only if

22  the evidence establishes a slight abnormality that has 'no more than a minimal effect on

23  an individual[']s ability to work.'"  *Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert v.*

1 *Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-

2 28)). According to Social Security Ruling 96-3b, "[a] determination that an individual's

3 impairment(s) is not severe requires a careful evaluation of the medical findings that

4 describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-

5 related symptoms), and an informed judgment about the limitations and restrictions the

6 impairments(s) and related symptom(s) impose on the individual's physical and mental

7 ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR

8 96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D.

9 Wa. 2009).

10

11      Plaintiff bears the burden to establish by a preponderance of the evidence the

12 existence of a severe impairment that prevented performance of substantial gainful

13 activity and that this impairment lasted for at least twelve continuous months.  20 C.F.R.

14 §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); *Bowen, supra*, 482 U.S. at

15 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v.*

16 *Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such

17 medical and other evidence of the existence thereof as the Secretary may require.'"

18 *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v.*

19 *Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen v. Apfel*, 2000 U.S. Dist. LEXIS

20 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505,

21 404.1520).

22

23      Here, the ALJ found that plaintiff suffered from the severe impairments of

24 lumbosacral degenerative disc disease with left leg radiculopathy; depression; and

ORDER ON PLAINTIFF'S COMPLAINT - 7

posttraumatic stress disorder (*see* Tr. 18). The ALJ also indicated his finding that

plaintiff's "history of cocaine dependence, methamphetamine abuse and marijuana abuse

are assessed as non-severe and not material in reaching a determination of disability (*id.*).

However, the ALJ failed to indicate whether or not he found plaintiff's alleged ADHD to

be a severe impairment (*see id.*).

The ALJ acknowledged that plaintiff alleged ADHD to be a mental impairment;

and also noted that Dr. Andrew S. Hwang, M.D. diagnosed ADHD, among other mental

impairments (*see* Tr. 20, 639). Although the ALJ indicated rejection of Dr. Hwang's

assignment of a global assessment of functioning ("GAF") of 55, the ALJ found that

plaintiff's depression, which was diagnosed by Dr. Hwang, was a severe impairment (*see*

Tr. 18, 20). The ALJ gave no indication what weight, if any, was given to Dr. Hwang's

assessment that plaintiff suffered from ADHD.

Likewise, the ALJ acknowledged that Dr. Dana Harmon, Ph.D. diagnosed plaintiff

with ADHD, yet, again, he failed to indicate whether or not he adopted this diagnosis (*see*

Tr. 21). He also failed to acknowledge that Dr. Harmon observed that plaintiff had

difficulty with the mini mental status examination ("MMSE") concentration tasks and

failed to acknowledge that Dr. Harmon assessed that plaintiff "had problems with

concentration, restlessness and focus during the evaluation" (*see* Tr. 371). However, an

ALJ in his written decision "may not reject 'significant probative evidence' without

explanation." *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent*

*v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700,

706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

The Court concludes that the multiple diagnoses of ADHD in the record; the observations by Dr. Harmon supporting said diagnosis; as well as the supporting allegations by plaintiff and the assessments of functional limitations resulting from the combination of plaintiff's mental impairments, all are significant, probative evidence that the ALJ erred in failing to discuss or reject explicitly. *See id.*

The Court also notes that the ALJ found that "Dr. Harmon did not reflect functional limitations without drug use" (*see* Tr. 21). The ALJ failed to support this finding with specific citation to the record and the Court concludes that it is not supported by substantial evidence in the record. Dr. Harmon indicated multiple areas in which she rated plaintiff's functional impairment at the highest level of impairment (*see* Tr. 371). For example, she opined that plaintiff suffered from severe limitations in his ability to exercise judgment and in his ability to respond appropriately to and tolerate the pressures and expectation of a normal work setting (*see id.*). It does not appear from a review of Dr. Harmon's assessment that she opined that plaintiff would not have any functional limitations regarding these abilities in the absence of drug abuse (*see* Tr. 369-75).

Similarly, although the ALJ indicated that "Dr. Harmon only utilized a check-off box psychological assessment form with very little narrative regarding any signs or testing," the Court concludes that this finding is not supported by substantial evidence in the record (*see* Tr. 21). First, the record reflects that every page of the assessment form filled out by Dr. Harmon, with the exception of the signature page, includes her

narratives added on to the form (*see* Tr. 369-73). In many instances, Dr. Harmon's narrative filled the section of space allowed for additional information (*see id.*). In addition, Dr. Harmon's assessment includes the discussion of plaintiff's difficulties with concentration on the MMSE as well as her opinions regarding his functional difficulties with concentration, both of which the ALJ failed to discuss (*see* Tr. 371). Thirdly, Dr. Harmon's assessment includes her report of various tests of plaintiff, such as the Beck Depression Inventory (BDI) and the Miller Forensic Assessment of Symptoms Test (M-FAST); and has plaintiff's MMSE test results attached (*see* Tr. 374-74). Finally, even if Dr. Harmon's assessment had little narrative, this fact would provide no support for the ALJ's decision here.

      The opinions of the non-examining, state agency medical consultants given "significant weight" by the ALJ here over the opinions of Dr. Harmon likewise were "check-off box psychological assessment form[s] with very little narrative regarding any signs or testing" (Tr. 21; *see also* Tr. 22, 468-84, 563-75). In fact, a review of the record not only reveals that they have the same amount, if not less, narrative added to their assessments than Dr. Harmon's assessments, but also reveals that the narratives added to the state agency non-examining consultants' assessments are the narratives of other doctors who actually performed the tests and examinations discussed, while the narratives added to Dr. Harmon's assessment are her own notes of significant facts, observations and assessments (*see* Tr. 470, 575). This type of situation demonstrates part of the reason why an examining doctor's opinion generally is "entitled to greater weight than the opinion of a nonexamining" doctor. *See Lester, supra*, 81 F.3d at 830 (citations omitted);

*see also* 20 C.F.R. § 404.1527(d). According to the Ninth Circuit, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831). Here, this was not done. *See id.*

Regarding whether or not plaintiff's alleged ADHD was a severe impairment, defendant implicitly acknowledges that the ALJ failed to indicate specifically his determination on this issue (*see* Response, ECF No. 16, pp. 5-6). However, defendant argues any error was harmless because the ALJ analyzed all of plaintiff's impairments in combination subsequently in his written decision when making his RFC finding (*see id.* at p. 5). However, there is a lack of evidence within the ALJ's written decision regarding whether or not he properly analyzed all of plaintiff's symptoms and impairments throughout the written decision. The ALJ failed to determine explicitly the severity of plaintiff's alleged ADHD when making the determination regarding plaintiff's severe impairments at step two, and he failed to mention it when he made his determination regarding plaintiff's RFC. The Court cannot assume that the ALJ appropriately considered the combined effect of all of plaintiff's impairments, including plaintiff's ADHD, when he made the determination regarding plaintiff's RFC and his ultimate determination regarding plaintiff's disability status.

The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on h[is] ability to function, without regard to whether each alone was sufficiently severe." *See Smolen, supra*, 80 F.3d at 1290 (citations omitted). Here,

the written decision by the ALJ does not reflect that he considered the combined effect of all of plaintiff's impairments, including his ADHD.  *See id.*  Although the ALJ indicated in general that he had considered all of plaintiff's credible symptoms, because the ALJ did not discuss explicitly plaintiff's ADHD as a severe impairment, the record does not support that indication by the ALJ and the Court cannot uphold the decision. *See id.*

The error by the ALJ in analyzing whether or not plaintiff's ADHD was severe led to a potential error in the ALJ's step three determination of whether or not plaintiff had an impairment or combination of impairments that met or medically equaled a Listed Impairment, *see infra*, section 2. Thus, the error in the step two finding of severe impairments cannot be found to be irrelevant to the ultimate disability determination. *See Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki, supra*, 556 U.S. at 407; *Stout, supra*, 454 F.3d at 1054-55.

For the reasons stated and based on the relevant record, this matter must be reversed and remanded for appropriate consideration of plaintiff's ADHD.

2. **The ALJ did not evaluate properly his determination regarding whether or not plaintiff met or medically equaled any of the Listed Impairments in step three of the sequential disability determination**.

Plaintiff alleges that he qualifies for the Listed Impairment of Listing 12.04 for Affective Disorders[1] and that the ALJ failed to evaluate properly this issue (*see* Opening

---

[1] Listing 12.04 Affective Disorders

1   Brief, ECF No. 13, pp. 6-9 (*citing* Tr. 22)). He also alleges that his impairments met or

2   medically equaled Listing 12.06 for Anxiety Disorders[2] (*id.*).

3

4
          Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive
5       syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally
        involves either depression or elation.
          The required level of severity for these disorders is met when the requirements in both A and B
6       are satisfied, or when the requirements in C are satisfied.
        A.   Medically documented persistence, either continuous or intermittent, of one of the
7              following:
              1.   Depressive syndrome characterized by at least four of the following:
8                      a.   Anhedonia or pervasive loss of interest in almost all activities; or
                       b.   Appetite disturbance with change in weight; or
9                      c.   Sleep disturbance; or
                       d.   Psychomotor agitation or retardation; or
                       e.   Decreased energy; or
10                     f.   Feelings of guilt or worthlessness; or
                       g.   Difficulty concentrating or thinking; or
                       h.   Thoughts of suicide; or
11                     i.   Hallucinations, delusions, or paranoid thinking; or
              2.   Manic syndrome  .  .  .  .
12                 or
              3.   Bipolar syndrome  .  .  .  .
13      AND
        B. Resulting in at least two of the following:
14      1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
15      4. Repeated episodes of decompensation, each of extended duration;
        OR
16      C. Medically documented history of a chronic affective disorder of at least 2 years' duration
        that has caused more than a minimal limitation of ability to do basic work activities, with
        symptoms or signs currently attenuated by medication or psychosocial support, and one of the
17      following:  .  .  .  .

18          20 C.F.R. pt. 404, subpt. P, app. 1, 12.04.
        [2] Listing 12.06, Anxiety Related Disorders:

19          In these disorders anxiety is either the predominant disturbance or it is experienced if the
        individual attempts to master symptoms  .  .  .  . The required level of severity for these
20      disorders is met when the requirements in both A and B are satisfied  .  .  .  .

21      A.   Medically documented findings of at least one of the following:
              1.   Generalized persistent anxiety accompanied by three out of four of the following signs or
22                 symptoms;
                       a.   Motor tension; or
                       b.   Autonomic hyperactivity; or
23                     c.   Apprehensive expectation; or
                       d.   Vigilance and scanning; or
              2.   A persistent irrational fear of a specific object, activity or situation which results in a
24                 compelling desire to avoid the dreaded object, activity or situation; or

1    At step-three of the administrative process, if the administration finds that the

2    claimant has an impairment(s) that has lasted or can be expected to last for not less than

3    12 months and is included in Appendix 1 of the Listings of Impairments, or is equal to a

4    Listed Impairment, the claimant will be considered disabled without considering age,

5    education and work experience.  20 C.F.R. § 404.1520(d).   The claimant bears the

6    burden of proof regarding whether or not he "has an impairment that meets or equals the

7    criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings").

8    *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

9    

10   Here, the ALJ, when finding that plaintiff did not meet or medically equal a

11   Listing, relied on a finding that two opinions from state agency non-examining medical

12   consultants both were "consistent with and supported by the medical evidence of record

13   for the time periods covered" (*see* Tr. 22).

14   However, substantial evidence does not support that finding.  First, these two state

15   agency opinions are not consistent with each other, making it difficult for both of them to

16   be consistent with the medical evidence of record. For example, the first opinion from the

17

---

18

19       3.   Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

20       4.   Recurrent obsessions or compulsions which are a source of marked distress; or
         5.   Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

21       AND
     B.  Resulting in at least two of the following:

22       1. Marked restriction of activities of daily living; or
         2. Marked difficulties in maintaining social functioning; or

23       3. Marked difficulties in maintaining concentration, persistence, or pace; or
         4. Repeated episodes of decompensation, each of extended duration.

24   C.F.R. § 404, Subpt. P, App. 1, Listing 12.06.

state agency consultant reflects an analysis regarding multiple diagnoses, including

psychotic disorder NOS [not otherwise specified] (*see* Tr. 473); mood disorder NOS and

rule-out depressive disorder (*see* Tr. 474); PTSD, chronic (*see* Tr. 476); as well as rule-

out substance induced psychotic disorder and mood disorder (*see* Tr. 479; *see also* Tr.

481 (indicating functional limitations being assessed for Listings 12.03, 12.04, 12.06,

12.09)). However, the second state agency medical consultant's opinion, about two and a

half months later, indicates a finding of "no medically determinable impairment" (*see* Tr.

563, 565, 566, 568, 571, 575). The first assessment covered a period of time from

February 5, 2008 through March 23, 2009, while the second covered the time from

February 5, 2008 through June 6, 2009 (*see* Tr. 471, 563). Although these assessments

covered largely the same period of time, they reveal a very different assessment of

plaintiff's impairments and the degree to which they affected his ability to function in

work environment. Therefore, the record from the assessments of the state agency

medical consultants provides little support for the ALJ's finding that these two

assessments both were "consistent with and supported by the medical evidence of record"

(*see* Tr. 22).

Secondly, the ALJ has not detailed medical evidence or other evidence from the

record that provides substantial support for the opinions of the state agency medical

consultants. For example, the opinions from the non-examining medical consultants

include opinions that plaintiff suffered from no difficulties in maintaining social

functioning or only mild to moderate difficulties in this area (*see* Tr. 469, 481, 573, 575).

However, inconsistent with these findings, Dr. Harmon indicated her opinion that

plaintiff suffered from severe limitations in one social factor; and marked limitations in three social factors, including his ability to relate appropriately to coworkers and supervisors, as well as the public, and to maintain appropriate behavior (*see* Tr. 371). There were no areas of social functioning in which Dr. Harmon opined that plaintiff's limitations were none or mild (*see id.*). Dr. Harmon's assessments were supported by her MMSE, plaintiff's other test results, his clinical interview and her own observations.

For the reasons stated, and based on a review of the relevant record, the Court concludes that the ALJ's finding that the opinions of the state agency, non-examining, medical consultants both were "consistent with and supported by the medical evidence of record" is not based on substantial evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d at 750) (*quoting Davis*, *supra*, 868 F.2d at 325-26) ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'").

The Court also notes that in order to have relied properly on opinions from non-examining doctors over the opinions of doctors who examined plaintiff, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence in the record as a whole. *See Van Nguyen*, *supra*, 100 F.3d at 1466 (*citing Lester, supra*, 81 F.3d at 831) ("In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record").

The ALJ also failed to explain the basis for his findings regarding the "B" criteria when evaluating whether or not plaintiff's mental impairments met or medically equaled

Listed Impairments 12.04 and 12. 06 (*see* Tr. 22). For example, the ALJ's finding in this context that plaintiff's difficulties in maintaining social functioning were "mild" is not supported by substantial evidence in the record as a whole (*see id.*). In addition, the ALJ's finding that plaintiff's difficulties in maintaining concentration, persistence or pace were moderate require that the ALJ at least discuss the findings by Dr. Harmon regarding plaintiff's difficulties regarding concentration (*see* Tr. 371).

3. **Plaintiff's residual functional capacity ("RFC") and credibility must be evaluated anew following remand of this matter**.

This Court already has determined that this matter should be reversed and remanded for further consideration of the medical evidence as well as steps two and three of the sequential disability process, *see supra*, sections 1 and 2. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility must be assessed anew following remand of this matter. *See id.*

The Court also notes that although the ALJ relied on plaintiff's inconsistent statements when failing to credit fully plaintiff's allegations, he also appeared to discount too readily opinions from examining doctors on the basis that they relied on plaintiff's self-reports. For example, when discussing the opinion of Dr. Hwang, the ALJ indicated that "by May 2006, the claimant reported an additional physical impairment of hepatitis-C to Dr. Hwang, which is not supported anywhere in the medical evidence of record" (*see* Tr. 20). However, contrary to the ALJ reliance on his finding regarding plaintiff's

credibility to discount Dr. Hwang's diagnosis of Hepatitis-C, it appears that ample

objective medical evidence of record establishes plaintiff's diagnosis.

For example, on March 10, 2005, plaintiff underwent a physical examination, and

Dr. Ralph J. Katsman, M.D. reviewed laboratory reports, including laboratory data of

"alanine aminotransferase 55, white blood cell count 4.59, hemoglobin 15.7, hematocrit

47.3, platelet count 190" (*see* Tr. 600). The doctor's assessment was "Chronic hepatitis

C, genotype 2 with stage I-II/IV fibrosis of the liver on last liver biopsy, currently on

pegylated interferon plus ribavirin therapy" (*id.*; *see also, e.g.,* Tr. 602, 604, 606, 607,

609-19, 628, 641, 663, 666, 668, 671, 698-99). The specificity with which Dr. Katsman

diagnosed plaintiff with hepatitis C, "genotype 2," suggests that the diagnosis was

assessed only after specific blood tests were performed and analyzed (*see* Tr. 600). In

fact, it appears that plaintiff's particular hepatitis was diagnosed with the aid of

polymerase chain reaction allowing for viral genetic analysis (*see* Tr. 628). Due to the

many, many indications of plaintiff's hepatitis-C in the record; the very specific

laboratory tests regarding this diagnosis; and the relevant record, including Dr.

Katsman's assessment, the Court concludes that the ALJ's finding that plaintiff's

hepatitis-C "is not supported anywhere in the medical evidence of record" is a finding not

based on substantial evidence in the record as a whole (*see* Tr. 20).

4. **This matter should be reversed for further proceedings, not for a direction to award benefits**.

Generally, when the Social Security Administration does not determine a

claimant's application properly, "'the proper course, except in rare circumstances, is

to remand to the agency for additional investigation or explanation.'" *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  However, the

Ninth Circuit has put forth a "test for determining when [improperly rejected]

evidence should be credited and an immediate award of benefits directed." *Harman*

*v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for
> rejecting such evidence, (2) there are no outstanding issues that
> must be resolved before a determination of disability can be
> made, and (3) it is clear from the record that the ALJ would be
> required to find the claimant disabled were such evidence
> credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th

Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.

Furthermore, the decision whether to remand a case for additional evidence or simply to

award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876 F.2d 683,

689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir.

1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998);

*Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).    If the medical evidence in the

record is not conclusive, sole responsibility for resolving conflicting testimony and

questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 7th day of February, 2013.

J. Richard Creatura
United States Magistrate Judge

ORDER ON PLAINTIFF'S COMPLAINT - 20